UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BRIAN A. PATTERSON,

                    Plaintiff,

        v.                                        Case No. 24-cv-585-pp

CANDACE WHITMAN, *et al.*,

                    Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED
WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING PLAINTIFF'S
MOTION FOR EMERGENCY INJUNCTIVE RELIEF (DKT. NO. 6) AND
SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

        Plaintiff Brian A. Patterson, who is incarcerated at Fox Lake Correctional
Institution and is representing himself, filed a complaint under 42 U.S.C.
§1983, alleging that the defendants provided him inadequate medical care and
retaliated against him. This decision resolves the plaintiff's motions for leave to
proceed without prepaying the filing fee, dkt. no. 2, and for emergency
injunctive relief, dkt. no. 6, and screens his complaint, dkt. no. 1.

**I.      Motion for Leave to Proceed without Prepaying the Filing Fee
        (Dkt. No. 2)**

        The Prison Litigation Reform Act (PLRA) applies to this case because the
plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h).
The PLRA lets the court allow an incarcerated plaintiff to proceed with without
prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the
plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then

must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On May 21, 2024, the court ordered the plaintiff to pay an initial partial filing fee of $86.15. Dkt. No. 7. The court received that fee on June 17, 2024. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.    Screening the Complaint**

    A.    Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

"accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.      The Plaintiff's Allegations

The complaint names as defendants Health Services Unit (HSU) Manager Candace Whitman, Nurse Practitioner Casey Kuehn, Nurse Practitioner Amy Denneau, Assistant Director of Nursing Robert Weinman, Sergeant Billy Pontow and various John or Jane Doe defendants. Dkt. No. 1 at ¶¶4–9. The complaint names all defendants in their individual and official capacities. Id.

The plaintiff alleges that on November 15, 2023, Kuehn gave him a seasonal flu shot in his right arm. Id. at ¶12. The next day, the plaintiff filed a

written request for medical attention because his right shoulder was painful, stiff and sore where he received the flu shot, and he felt "flu symptoms." Id. at ¶13. Nurse Ziegler (not a defendant) triaged the request and referred the plaintiff for an evaluation. Id. Ziegler saw the plaintiff the next day, noted his pain and difficulty moving his arm and prescribed ice and ibuprofen. Id. at ¶14. The plaintiff alleges that Ziegler told him that the "flu shot was causing prolonged pain and injuries due to 'new' additives in the chemistry of the vaccine." Id.

On November 24, 2023, the plaintiff filed another written request for medical attention because he was still experiencing pain, and the treatment he received was not helping. Id. at ¶15. The next day, Kuehn processed the plaintiff's request and placed him on a "no rec" restriction. Id. at ¶16. Kuehn evaluated the plaintiff and noted no swelling, warmth or redness at the injection site. Id. at ¶16. She placed the "no rec" restriction "to prevent further injury" and encouraged him to perform range-of-motion exercises. Id.

On December 14, 2023, the plaintiff again requested medical attention for his arm, and Ziegler scheduled him to see a registered nurse. Id. at ¶¶18–19. The plaintiff alleges that HSU Manager Whitman "crossed out" his appointment with the registered nurse, noted that she had been advised the plaintiff was "playing basketball" and told the plaintiff he needed to give his arm time to heal. Id. at ¶20. The plaintiff alleges that the statement about him playing basketball was "false and misleading" and "consistent with HSU's overall policy, practice and procedure of providing unreasonable and

4

inadequate medical care." Id. He asserts that he did not use the recreation center after his flu shot because of the pain in his arm and the "no rec" restriction." Id. at ¶21. He says that Whitman did not reschedule him for treatment for his ongoing pain. Id. at ¶20.

On December 19, 2023, Nurse Quass (not a defendant) evaluated the plaintiff and noted that he had not received relief from his pain from the two previous evaluations. Id. at ¶22. She referred him for an appointment with a doctor and physical therapy. Id. The same day, the plaintiff sent a form to Whitman denying that anyone reported seeing him play basketball and noting his restriction on recreation. Id. at ¶23. He asked Whitman to remove her "false or inaccurate information" about him playing basketball from his medical file. Id. On December 20, 2023, after borrowing a TENS unit from another incarcerated person, the plaintiff submitted a written request for a TENS unit of his own to relieve his pain. Id. at ¶¶24–25. Nurse Kizer (not a defendant) referred the plaintiff to see a doctor for a TENS unit and for physical therapy. Id. at ¶26.

On December 26, 2023, the plaintiff again requested that Whitman remove the information about him playing basketball from his medical file. Id. at ¶27. Nurse Ziegler instead responded by sending him a blank form "to begin the process of removing the incorrect info." Id. Two days later, the plaintiff submitted the completed form, which HSU staff acknowledged and forwarded to Whitman a day later. Id. at ¶¶28–29. On January 4, 2024, Whitman denied the plaintiff's request and wrote that the information about him playing basketball "[was] accurate and complete." Id. at ¶30.

The plaintiff alleges that on January 26, 2024, Nurse Denneau cancelled his doctor appointment without cause and ordered a "Functional Observation" to determine if he was faking his arm injury. Id. at ¶31. The plaintiff alleges that Whitman approved the cancellation of his appointment, which also was part of the "HSU's overall policy, practice and procedure of inadequate medical care." Id. The plaintiff claims Denneau and Whitman cancelled his appointment in retaliation for him complaining about his inadequate care and seeking removal of the "false information" from his medical file. Id. at ¶32.

On February 1, 2024, Kuehn cancelled another doctor appointment that the plaintiff had scheduled. Id. at ¶34. The plaintiff asserts that Whitman approved this cancellation in retaliation for his previous complaints. Id. at ¶35. He asserts that Kuehn "misleadingly filled out" a form "identifying 15 activities that Sgt Kimball [not a defendant] allegedly observed [the plaintiff] perform," including working as a food server. Id. at ¶36. He again alleges that Whitman approved this information as part of the HSU's policy of providing inadequate care. Id. The plaintiff alleges that Kuehn forged Kimball's "name and or signature" to make it appear as though Kimball completed the form "based on [his] personal observations." Id. at ¶37. He says Kuehn additionally completed a false HSU Assessment Form to support "her fabricated evidence." Id. at ¶38. He alleges that Whitman approved of or assisted Kuehn in creating this form and that Kuehn forged this information to retaliate against the plaintiff for his past complaints about the HSU. Id.

On February 26, 2024, the plaintiff submitted a form complaining that another incarcerated person had been favorably treated for a similar injury to his. Id. at ¶39. The next day, Whitman told the plaintiff that she had reviewed his form and scheduled him for a doctor appointment, but she did not actually schedule the appointment. Id. at ¶40. Yet the plaintiff alleges that on March 7, 2024, a sergeant told him that the HSU had cancelled his doctor appointment and would reschedule it. Id. at ¶44. In the meantime, the plaintiff requested copies of his medical file from November 14, 2023 (just before his injury) through March 2024. Id. at ¶¶42, 45. On March 15, 2024, he received copies of his medical files as requested. Id. at ¶47. The plaintiff reviewed his files and showed Kimball the form that Kuehn allegedly fabricated; he says Kimball "adamantly denied talking to Defendant Kuehn" about that information and denied signing the form. Id. at ¶48. The plaintiff sent forms to Kuehn informing her about the alleged fabrication and asking her to "remove the false info" from his medical file. Id. at ¶50. Kuehn did not respond to these requests or remove the information from the plaintiff's medical file. Id.

On March 20, 2024, the plaintiff spoke to Lieutenant Draves (not a defendant) in the presence of Pontow about Kuehn's fabricated forms. Id. at ¶51. The lieutenant advised the plaintiff to file an internal complaint about the matter. Id. But Pontow then told the plaintiff that "[he] remember[ed] that [he] talked to HSU [Defendant Kuehn]" about the information in the forms, and it was mistakenly attributed to Kimball. Id. at ¶52. The plaintiff questioned Pontow about his alleged observations, which included seeing the plaintiff

shower, dress without difficulty and perform other activities; he says Pontow "admitted that he did not actually observe any of the items on the forms." Id. (bolding omitted). The plaintiff alleges that Pontow lied to him about the forms to dissuade him from filing the internal complaint. Id. at ¶¶52–53.

On March 23, 2024, the plaintiff submitted forms to Draves asking him to write an incident report memorializing their March 20 conversation and informing him about Pontow's attempt to dissuade the plaintiff from writing an internal complaint. Id. at ¶55. He also informed the HSU that it had not included all his medical files in response to his request for them. Id. at ¶¶56–57. He again requested that the "false info" be removed from his medical file. Id. at ¶57. Whitman responded the next day, told the plaintiff that his cancelled doctor appointment had been rescheduled for the next week and sent him a blank form to request removal of the false information from his file. Id. at ¶59. The plaintiff asserts that Whitman did not tell him who cancelled his doctor appointments in retaliation for his previous complaints about the HSU and the alleged false information in his file. Id. at ¶61.

On March 29, 2024, the plaintiff completed and resubmitted the form requesting removal of the allegedly false information from his file. Id. at ¶62. He says Fox Lake staff informed him the next day that the form had been forwarded to Whitman. Id. at ¶64. He alleges that he still had not received treatment for his right arm pain. Id. at ¶65. He says Whitman reviewed his form about the false information on April 5, 2024, but never contacted Kuehn or Kimball about it. Id. at ¶¶68–69. He asserts that Whitman "implicitly

8

approved" of Kuehn's fabrications by failing to intervene. Id. at ¶70. He says Whitman justified her fabrications about the plaintiff playing basketball "by implicating John and Jane Doe Defendants as the source" of that information. Id. at ¶72. He says Kuehn again maintained her allegedly false information and reiterated that she had not spoken with Pontow, which the plaintiff says enforces his belief that Pontow lied to him to dissuade him from filing an internal complaint. Id. at ¶¶73–75.

On April 2, 2024, after the plaintiff "threatened to file complaints with the State Board against Defendant Whitman's and Kuehn's license," he had an appointment with Dr. Godiwalla (a urologist and not a defendant) about his right arm. Id. at ¶66. She ordered x-rays, prescribed him a TENS unit and injections for his pain and gave him "extended medical ice." Id. The plaintiff declined the x-ray, requesting instead an MRI or sonogram. Id. at ¶71. He says the HSU radiologist informed him that x-rays were always requested first "because they are cheaper than MRIs." Id. On April 9, 2024, the plaintiff underwent an ultrasound on his injured shoulder. Id. at ¶78. The results were inconclusive, and Godiwalla recommended another ultrasound or an MRI if his symptoms worsened. Id. at ¶79. On April 12, 2024, the plaintiff asked Godiwalla to remove his "no rec" restriction and allow him to ride a stationary bike and walk around the track at Fox Lake because he had gained weight from not exercising. Id. at ¶82. The restriction was removed the next day. Id.

On April 17, 2024, the plaintiff wrote a letter to Weinman about Whitman and Kuehn's alleged fabrications in his medical file. Id. at ¶85. He says that

Weinman responded to this letter on April 25, 2024, noted that he had reviewed the plaintiff's medical file and refused to investigate Kuehn or Whitman. Id. at ¶87. He noted that the plaintiff had "the right to be dissatisfied with HSU, however, they do not have to change their documentation because [the plaintiff] disagree[s] with it." Id.

The plaintiff asserts that because of the flu shot and inadequate care afterward, he has permanent restricted motion in his right arm, he gained twenty pounds and he cannot sleep on his right side. Id. at ¶88. He says he experiences "mental anxiety and distress from Defendants targeting him," denying him proper care and retaliating against him for complaining about his care. Id. at ¶89. He asserts that Whitman, Kuehn and Denneau "knew or should have known" that he needed proper care for his right arm pain, but that they "consciously disregarded and ignored" his condition and were indifferent to his serious medical need. Id. at ¶¶92–93. He claims that the defendants' misconduct "is a direct result of the DOC's and Bureau of Health Services' unwritten policy, practice, and procedure to dissuade inmates from seeking medical care to reduce overall costs due to budgetary concerns." Id. at ¶95.

The plaintiff seeks to proceed against the defendants under federal and state law for providing inadequate medical care, failing to intervene to provide him proper care and being negligent to his serious medical issue. Id. at ¶¶125–132, 146–150. He asserts that they retaliated against him for complaining about his inadequate medical treatment. Id. at ¶¶133–138. He claims that the defendants conspired to deny him proper medical treatment and dissuade him

from filing complaints about his treatment. Id. at ¶¶140–144. He seeks a declaratory judgment that the defendants violated his rights; a preliminary and permanent injunction arranging for proper medical treatment, removing the allegedly false information from his medical file and preventing the defendants "from further falsifying documents in [his] medical file"; and unspecified compensatory and punitive damages. Id. at pp.34–37.

C.    Analysis

The court reviews claims regarding the denial of medical care under the Eighth Amendment, which prohibits cruel and unusual punishments. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). But not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. To state a valid Eighth Amendment claim, the plaintiff must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835. A prison official cannot be found liable under the Eighth Amendment unless he subjectively knows of an excessive risk of harm to an incarcerated person's health or safety and disregards that risk. Id. at 837; Perez, 792 F.3d at 776.

The plaintiff alleges that his right shoulder became sore and painful after he received a flu shot and that defendants Whitman, Kuehn and Denneau

failed to provide him proper treatment for his pain. The plaintiff's allegations of severe and persistent pain may constitute a serious medical need to satisfy the objective component. Walker v. Benjamin, 293 F.3d 1030, 1040 (7th Cir. 2002). The plaintiff says that Ziegler first evaluated him about his arm and provided him conservative treatment that did not help. He alleges that Kuehn evaluated his arm and placed him on a "no rec" restriction but did not provide other treatment for his pain. He does not allege that any defendant was again involved in his medical treatment for his arm. He instead alleges that Whitman, Kuehn and Denneau prevented him from receiving treatment and cancelled his appointments with registered nurses and doctors, citing allegedly false information that the plaintiff was seen playing basketball and working without difficulty. He says that he has yet to see a qualified doctor about his arm and has seen only Godiwalla, who is a urologist. The court will allow the plaintiff to proceed on an Eighth Amendment claim that Whitman, Kuehn and Denneau knowingly denied him proper medical treatment based on false information and their alleged fabrications in his medical files.

The plaintiff also alleges that Whitman failed to intervene to stop Denneau and Kuehn from cancelling his doctor appointments. Although these facts are different from those alleged in support of the plaintiff's deliberate indifference claim, the protection that the Eighth Amendment provides is the same. The court will allow the plaintiff to proceed on his allegations about the cancelled doctor appointments as part of his Eighth Amendment deliberate indifference claim. He may not proceed on a separate Eighth Amendment claim

against Whitman for failing to prevent Kuehn and Denneau from cancelling his doctor appointments.

The plaintiff also seeks to proceed on a claim under state law that defendants Whitman, Kuehn and Denneau were negligent regarding his medical issue. Federal courts may exercise supplemental jurisdiction over a state law claim that is "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367(a). Negligence does not violate the Constitution. See Estelle, 429 U.S. at 106 (1976); Brown v. Peters, 940 F.3d 932, 937 (7th Cir. 2019). But the plaintiff may raise this claim under state law. Because the facts underlying the plaintiff's claim of negligence are the same as those underlying his Eighth Amendment claim, the court will exercise supplemental jurisdiction over the plaintiff's state law claim.

The plaintiff does not state a claim against Weinman. The plaintiff has not alleged that Weinman works at Fox Lake or even saw or treated him for his arm pain. He alleges only that he sent Weinman a letter about Whitman and Kuehn's alleged misconduct, and that Weinman "turned a blind eye" and did not investigate or correct it. Dkt. No. 1 at 35. But the complaint also says that Weinman reviewed the plaintiff's medical file and responded to his letter. The plaintiff does not have a right to an investigation or particular response to his letter. See Williams v. Tannan, Case No. 20-cv-1659-pp, 2024 WL 1071857, at *17 (E.D. Wis. Mar. 12, 2024) (citing cases). His dissatisfaction with Weinman's response does not mean that Weinman was deliberately indifferent to the

plaintiff's concern. See Courtney v. Devore, 595 F. App'x 618, 620 (7th Cir. 2014) (citing Burks v. Raemisch, 555 F.3d 592, 595–96 (7th Cir. 2009)) ("[C]hief administrators are ordinarily not personally liable for decisions made by subordinates, even if they receive a letter complaining about those decisions and do not intervene."). The court will dismiss Weinman.

The plaintiff alleges that Denneau, Whitman and Kuehn retaliated against him for filing complaints about his medical treatment by cancelling his doctor appointments and forging information in his medical files. The court analyzes these allegations under the First Amendment. See Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009). To state a claim of retaliation, the plaintiff must allege that "he engaged in a protected activity," "he suffered a deprivation likely to prevent future protected activity" and "his protected activity was a motivating factor in the defendants' decision to retaliate." Daugherty v. Page, 906 F.3d 606, 610 (7th Cir. 2018) (citing Perez, 792 F.3d at 783).

The plaintiff alleges that he filed complaints against HSU staff for the allegedly inadequate treatment of his right arm. That was protected activity. See Holleman v. Zatecky, 951 F.3d 873, 878 (7th Cir. 2020). He alleges that Denneau, Whitman and Kuehn then cancelled his doctor appointments for treatment of his arm in retaliation for his earlier complaints. Although that action did not stop him from continuing to grieve his treatment, the "likely to prevent future protected activity" standard is objective; that means "a specific plaintiff's persistence does not undermine his claim." Douglas v. Reeves, 964 F.3d 643, 646 (7th Cir. 2020) (citing Holleman, 951 F.3d at 880). The court

finds the plaintiff's allegations sufficient to state a First Amendment claim of retaliation against Denneau, Whitman and Kuehn.

The plaintiff also alleges that Pontow retaliated against him for filing grievances against HSU staff by lying about the statements that Kuehn made in the plaintiff's medical records to dissuade him from a filing an internal grievance against Kuehn. These allegations do not state a claim of retaliation. First, Pontow was not the subject of the plaintiff's grievances, so it is unclear why he would "retaliate" against the plaintiff for filing them. Even if he did, his alleged lies to the plaintiff were provably false, and the plaintiff does not allege that he suffered any deprivation because of them. Kuehn refuted Pontow's suggestion that he was the sergeant who observed the plaintiff working despite his injury, and the plaintiff was not prohibited or even dissuaded from filing administrative complaints against the defendants (including Pontow). A reasonable incarcerated person in this situation likewise would not have been deterred from pursuing his administrative complaints. These allegations do not satisfy the three elements of a claim of retaliation against defendant Pontow.

The plaintiff also asserts that the defendants worked together and conspired to deprive him of adequate medical treatment and dissuade him from filing administrative complaints. To proceed on his conspiracy claim, the plaintiff must show that "(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." Beaman v. Freesmeyer, 776 F.3d 500, 510 (7th Cir. 2015). Put differently, the plaintiff must "show an underlying

constitutional violation" and "demonstrate that the defendants agreed to inflict the constitutional harm." Hurt v. Wise, 880 F.3d 831, 842 (7th Cir. 2018). The plaintiff may use circumstantial evidence to establish the existence of a conspiracy, "but such evidence cannot be speculative." Beaman, 776 F.3d at 511. The plaintiff must plead facts showing existence of a conspiracy and must "plead facts plausibly suggesting that the conspiracy caused a harm of constitutional magnitude." LaFaive v. Wolff, No. 23-2549, 2024 WL 277454, at *2 (7th Cir. Jan. 25, 2024) (citing Campos v. Cook County, 932 F.3d 972, 975 (7th Cir. 2019)).

The plaintiff has not stated a claim of conspiracy. He alleges that Pontow lied about telling Kuehn that he observed the plaintiff working and performing other activities to suggest his injury was fake and prevent him from filing grievances against Kuehn. Kuehn insisted that another sergeant (Kimball) provided her that information, which the plaintiff says shows that Pontow "conspired or attempted to conspire with HSU staff to retaliate against" him. Dkt. No. 1 at ¶75. But the plaintiff has not alleged that Pontow "reached an agreement" with any other defendant (or person) to violate his rights; his allegations suggest that Kuehn *did not agree* with Pontow about who provided her the allegedly false information. Nor does the plaintiff say what "overt acts" Pontow and any other person took to violate his rights. That Pontow independently attempted to dissuade the plaintiff from filing an administrative complaint is not evidence that he conspired with others. The plaintiff also says that Whitman, Kuehn and Denneau conspired to violate his rights, but he

alleges no facts to support that claim. He only concludes that because those defendants did not provide him adequate medical treatment, they must have conspired to do so. The plaintiff's conclusory assertions of a conspiracy are speculative and unsupported. The court will not allow him to proceed on a claim that any defendant conspired to deprive him of his constitutional rights.

Nor will the court allow the plaintiff to proceed against the John or Jane Does. Although the plaintiff may use John or Jane Doe placeholders to identify persons whose names he does not know, he cannot use a Doe placeholder to identify a *group* of staff members named collectively as one defendant. See Cash v. Marion Cnty. Jail, 211 F. App'x 486, 488 (7th Cir. 2006) (affirming district court's dismissal of suit naming jail "staff" as defendants); Gray v. Weber, 244 F. App'x 753, 754 (8th Cir. 2007) (affirming dismissal of prisoner's §1983 complaint against defendants identified "only collectively as 'medical staff'"). A complaint must allege how each defendant was *personally* involved in the alleged conduct and *specifically* violated the plaintiff's rights. It is not enough to say that an unspecified group of unidentified persons acted in the same way to collectively violate the plaintiff's rights. See Brooks v. Ross, 578 F.3d 574, 580 (7th Cir. 2009) (affirming that "vague phrasing" in complaint that "'one or more of the Defendants' had engaged in certain acts or deprived [plaintiff] of his constitutional rights . . . does not adequately connect specific defendants to illegal acts"). The only allegation about the Does is that Whitman "implicat[ed]" them as the source of "misinformation" about him playing basketball while injured. The complaint does not allege that the Does

intentionally provided this information to prevent the plaintiff from receiving appropriate medical treatment. Nor does it say how many Does were involved or even suggest who they are; the complaint generally lists their job titles as "registered nurses, doctors, Correctional Officers, or Sergeants." Dkt. No. 1 at ¶9. This broad generalization does not provide sufficient information to identify the person or persons who the plaintiff believes violated his rights or connect them to unconstitutional conduct.

Finally, the plaintiff seeks to proceed against the defendants in their official capacities. Claims against an official in his official capacity represent another way to plead an action against the entity that he represents or for which the official works. Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690, n.55 (1978)). The court construes the official capacity claims against the defendants as having been brought against the Wisconsin Department of Corrections, the agency for which they work. Id. at 165–66. And because claims against the Department of Corrections are "no different from a suit against the State itself," the court construes these claims as if brought against the State of Wisconsin. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Graham, 473 U.S. at 165–66; Monell, 436 U.S. at 690 n.55).

The plaintiff alleges that the Fox Lake HSU has an overall or official policy, practice or procedure of providing inadequate medical treatment to incarcerated persons to save money. He says this policy is why he was first given an x-ray instead of an MRI, even though he eventually received other imaging tests. The

plaintiff provides scant additional information beyond his own insistence to demonstrate that there exists such a policy. Nonetheless, the court must accept those allegations as true for the purpose of screening the complaint. The plaintiff may proceed on his official-capacity claims against defendants Whitman, Denneau and Kuehn for injunctive relief. Greenawalt v. Ind. Dep't of Corr., 397 F.3d 587, 589 (7th Cir. 2005) (citing Luder v. Endicott, 253 F.3d 1020, 1024–25 (7th Cir. 2001)). He may not seek monetary damages against the defendants in their official capacities because damages are not available against the State of Wisconsin, which is the effective party for his official-capacity claims. See Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 617 (2002); Williams v. Wisconsin, 336 F.3d 576, 580 (7th Cir. 2003).

To summarize: the plaintiff may proceed on the following claims: 1) an Eighth Amendment claim of deliberate indifference against Whitman, Kuehn and Denneau in their individual capacities; 2) a First Amendment claim of retaliation against Whitman, Kuehn and Denneau in their individual capacities; 3) a state-law claim of negligence against Whitman, Kuehn and Denneau; and 4) an official capacity claim for injunctive relief against Whitman, Kuehn and Denneau related to the HSU's alleged policy of inadequate treatment. The court will dismiss defendants Pontow, Weinman and the John and Jane Does because the complaint does not state a claim against them.

## III. Motion for Emergency Injunctive Relief (Dkt. No. 6)

On May 20, 2024, the court received the plaintiff's motion for emergency injunctive relief. Dkt. No. 6. The plaintiff reiterates the details of his shoulder issues and his legal claims against the defendants. Id. at 1–2. He asserts that he is entitled to a temporary restraining order (TRO) and/or a preliminary injunction providing him appropriate medical care. Id. at 2. He contends that the defendants' refusal to provide him proper care is a "continuing deprivation of Constitutional rights [that] represents *ipso facto* irreparable harm." Id. at 3. He says that without proper care, "he may never be able to engage the full range of motion and movement that he did before the injury." Id. at 5. The plaintiff asserts that his present and potential suffering if he loses full range of motion in his arm "are enormous" and outweigh the potential hardship to the defendants, which he says "amounts to nothing more than business as usual." Id. He claims that he "has a great likelihood of success on the merits" because the defendants' alleged actions are unconstitutional. Id. at 5–6 (citing Estelle, 429 U.S. at 105). He says that he "is virtually guaranteed to succeed on the merits since this case indisputably demonstrates that" the defendants denied him treatment and falsified his medical documents. Id. at 6. He also says that Kimball has agreed to "cooperate with any investigation and testify that his signature was forced." Id. at 7. Finally, the plaintiff alleges that the relief he seeks will serve the public interest "because it is always in the public's interest for prison officials to obey the law." Id.

To obtain preliminary injunctive relief, whether through a TRO or preliminary injunction, the plaintiff must show that (1) his underlying case has some likelihood of success on the merits, (2) no adequate remedy at law exists, and (3) he will suffer irreparable harm without the injunction. Wood v. Buss, 496 F.3d 620, 622 (7th Cir. 2007). A preliminary injunction is not appropriate to guard against the "mere possibility of irreparable injury." Orr v. Shicker, 953 F.3d 490, 501 (7th Cir. 2020) (citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008)). If the plaintiff can establish those three threshold factors, then the court must balance the harm to each party and to the public interest from granting or denying the injunction. See Wood, 496 F.3d at 622; Korte v. Sebelius, 735 F.3d 654, 665 (7th Cir. 2013); Cooper v. Salazar, 196 F.3d 809, 813 (7th Cir. 1999). The balancing analysis "involves a 'sliding scale' approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." Mays v. Dart, 974 F.3d 810, 818 (7th Cir. 2020) (citing Ty, Inc. v. Jones Grp., Inc., 237 F.3d 891, 895 (7th Cir. 2001)). A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997).

The court will deny the plaintiff's motion for emergency injunctive relief because he has not satisfied any of the three threshold criteria. The plaintiff alleges only that it is possible he will lose full range of motion in his arm. He does not say that this has happened or that it certainly will happen if the court

denies him injunctive relief. He says nothing about whether an adequate remedy at law exists. He also fails to demonstrate that he is likely to succeed on the merits. The plaintiff must show more than "a mere possibility of success" to demonstrate his entitlement to a preliminary injunction. Ill. Republican Party v. Pritzker, 973 F.3d 760, 762 (7th Cir. 2020). To obtain a preliminary injunction, he must make a "'strong' showing" that he is likely to succeed, which "normally includes a demonstration of how the applicant proposes to prove the key elements of its case." Id. at 763.

The plaintiff explains *why* he thinks his claims will succeed, but he does not explain *how* he will prove the key elements of his claims. He says he is "virtually guaranteed to succeed on the merits" because the defendants' alleged actions violated the Constitution. It is true that the complaint alleges facts that *could* amount to constitutional violations, which is why the court is allowing it to move past screening. But screening is a very low standard. The plaintiff's motion restates his allegations but does not go further and explain *how* he will prove them and succeed on his claims, particularly after the defendants have had an opportunity to respond and dispute the allegations. The plaintiff does say that Kimball will testify in his favor, but he has no statement from Kimball agreeing to testify. Nor does the plaintiff explain how Kimball's testimony about a forged medical document will prove any element of his claims. Kimball's testimony—if he gives it—may support one or more elements of the plaintiff's claims, but neither the complaint nor the plaintiff's motion explain how that testimony will *prove* any element, much less all of them. He does not say how

Kimball's testimony about the forged document shows that he had an objectively serious medical issue that the defendants disregarded, nor does he explain how Kimball's testimony relates to his protected conduct against which the defendants retaliated. The plaintiff proposes no other path for success on the merits of his claims.

Because the plaintiff has not satisfied any of the threshold elements for a TRO or preliminary injunction, the court will not weigh or discuss the harm to the parties or the public interest in providing an injunction. See Cassell v. Snyders, 990 F.3d 539, 544–45 (7th Cir. 2021) (citing Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc., 549 F.3d 1079, 1086 (7th Cir. 2008), abrogated in part on other grounds by Pritzker, 973 F.3d at 762–63). The court will deny his motion.

## IV.  Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES** the plaintiff's motion for emergency injunctive relief. Dkt. No. 6.

The court **DISMISSES** defendants Billy Pontow, Robert Weinman and John and Jane Does.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Candace Whitman, Casey Kuehn and Amy Denneau. Under the

23

informal service agreement, the court **ORDERS** those defendants to respond to the complaint within sixty days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$263.85** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Fox Lake Correctional Institution where the plaintiff is confined.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 23rd day of August, 2024.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**