UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BRIAN A. PATTERSON,

                    Plaintiff,

v.                                                                                       Case No. 24-cv-585-pp

CANDACE WHITMAN, *et al.*,

                      Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION BUT DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT (DKT. NO. 20)**

On May 13, 2024, plaintiff Brian A. Patterson—representing himself—filed a complaint under 42 U.S.C. §1983. The court screened the complaint on August 23, 2024 and allowed the plaintiff to proceed on federal and state-law claims for damages and injunctive relief against defendants Candace Whitman, Casey Kuehn and Amy Denneau. Dkt. No. 11. The court dismissed defendants Robert Weinman, Billy Pontow and John or Jane Doe defendants because the complaint did not state a claim against them. Id. at 19.

On September 9, 2024, the court received the plaintiff's proposed amended complaint. Dkt. No. 12. On October 23, 2024, the court denied the plaintiff's request to proceed on the amended complaint because it did not "comply with the court's Civil Local Rules," which require "that a party moving to amend must attach his proposed amended complaint to a motion to amend and the motion must 'state specifically what changes are sought by the proposed amendments.'" Dkt. No. 18 at 1 (quoting Civil Local Rule 15(a)–(b) (E.D. Wis.)). The court explained that the plaintiff's proposed amended complaint was longer than his original and included thirteen pages of exhibits,

but that the plaintiff did "not explain why he need[ed] to include an additional seven pages and twenty-seven paragraphs of allegations, nor [did] he explain the differences between the original complaint and the amended complaint." Id. at 2.

On November 1, 2024, the court received the plaintiff's motion for reconsideration and for leave to proceed on the amended complaint. Dkt. No. 20. This motion identifies the changes the plaintiff made in his amended complaint, which includes adding details for his dismissed claim against defendant Pontow, identifying some of the John Doe defendants and adding Sergeant Kimball as a defendant "to address this Court's concerns regarding [the plaintiff's] ability to secure Kimball's evidence and his overall relevance in proving the claims." Id. at ¶¶3–5. The plaintiff asks the court "to excuse his inability" to reattach the proposed amended complaint because he has no money to make additional copies of the amended complaint and because "the Amended Complaint is already in the record." Id. at ¶6 (citing Dkt. No. 12).

## I. Motion for Reconsideration (Dkt. No. 20)

The plaintiff does not identify a rule or a statute authorizing his motion. Because the court has not entered judgment, it construes his motion for reconsideration as a motion under Federal Rule of Civil Procedure 54(b). That rule states, in part, that

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Motions for reconsideration serve a limited function. They allow the court to correct manifest errors of law or fact or the plaintiff to present newly discovered evidence that wasn't available before the court ruled. Caisse Nationale de

Credit v. CBI Industries, 90 F.3d 1264, 1269 (7th Cir. 1996). They are not a vehicle for losing parties to reargue issues decided against them. Id. at 1270. A "manifest error of law" "is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" Oto v. Metro. Life Ins. Co., 224 F.3d 601, 606 (7th Cir. 2000) (quoting Sedrak v. Callahan, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)).

The court did not make a "manifest error of law" in its October 23, 2024 order denying the plaintiff's request to proceed on his proposed amended complaint, and the plaintiff does not suggest that the court made one. Instead, the plaintiff provides the details he should have included earlier, including the specific changes he made in the proposed amended complaint, and asks the court to allow him to proceed on his amended complaint. Because the plaintiff has attempted to follow the court's October 23, 2024 order regarding his proposed amended complaint, the court will grant his motion for reconsideration.

## II. Motion for Leave to Amend (Dkt. No. 20)

As the court explained in the October 23, 2024 order, "'[a] party may amend its pleading once as a matter of course' within twenty-one days of service or within twenty-one days after service of a responsive pleading." Dkt. No. 18 at 1 (quoting Fed. R. Civ. P. 15(a)(1)). Because the plaintiff already has asked to amend his complaint, and the court denied that request, the plaintiff may amend "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Courts must "freely give leave [to amend] when justice so requires." Id. Nonetheless, the court retains discretion whether to allow amendment and may deny the request because of "undue delay, bad faith

or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962).

> A. Federal Screening Standard

To determine whether the amended complaint states additional claims on which the plaintiff may proceed, the court will apply the same standards it applied when screening the plaintiff's original complaint. As the court explained in the August 23, 2024 screening order, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Fed. R. Civ. P. 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable

4
Case 2:24-cv-00585-PP    Filed 02/21/25    Page 4 of 16    Document 31

inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.     The Plaintiff's Allegations

The amended complaint largely is identical to the original complaint. Given the length of both complaints, the court will detail only the amendments that the plaintiff describes in his motion for reconsideration. The court will note where the plaintiff reiterates the allegations from his original complaint.

As in the original complaint, the amended complaint names as defendants Health Services Unit Manager Candace Whitman, Nurse Practitioner Casey Kuehn, Nurse Practitioner Amy Denneau, Sergeant Billy Pontow and various John or Jane Doe defendants. Dkt. No. 12 at ¶¶4–7, 12. But the amended complaint adds defendants Sergeants Robert Kimball, Jessie Harke, Mike Taves and Doug Koerner. Id. at ¶¶8–11. The complaint names all defendants in their individual and official capacities. Id. at ¶¶4–12.[1]

---

[1] The amended complaint does not rename Robert Weinman as a defendant. See Dkt. No. 1 at ¶7; Dkt. No. 11 at 13–14.

The plaintiff realleges that Kuehn gave him a flu shot on November 15, 2023, and that afterward he requested medical attention because his shoulder, where he received the shot, was painful. Id. at ¶¶15–22; see Dkt. No. 11 at 3–4 (citing Dkt. No. 1 at ¶¶12–19). He realleges that Kuehn placed him on a no-recreation restriction "to prevent further injury." Dkt. No. 12 at ¶20; see Dkt. No. 1 at 4 (citing Dkt. No. 1 at ¶16).

The plaintiff newly alleges that on December 15, 2023, Sergeants Taves, Harke, Koerner and other still unnamed and unidentified John or Jane Does falsely told defendant Whitman that the plaintiff had been playing basketball at recreation. Dkt. No. 12 at ¶23. The plaintiff says that he "cannot positively identify" these defendants as the persons who relayed the false information about him playing basketball because Whitman "has refused to identify them since she falsely implicated them and knows that they will not support her claims because they will be disproved by video and documentary evidence." Id. at ¶23, n.1. He says that he spoke with Harke and Koerner on August 28, 2024, and that they vehemently denied being Whitman's "alleged source" of the misinformation about the plaintiff playing basketball. Id. Harke allegedly told the plaintiff "that the rec sign-in sheets as well as video evidence will easily verify that [the plaintiff] never attended rec during the time period that Defendant Whitman falsely alleged." Id. The plaintiff nonetheless claims that these sergeants knew that the plaintiff had a serious medical issue and relayed this false information "with the express and implicit approval of, and in concert with" Whitman, Denneau and Kuehn and consistent with an overall practice of providing incarcerated persons inadequate health care. Id. at ¶23. Yet in the very next paragraph, the plaintiff alleges that Sergeants Taves, Harke, Koerner and other John/Jane Does *may not have* relayed this false information to

Whitman, and he speculates that perhaps Whitman simply made it up herself. Id. at ¶24. Either way, the plaintiff realleges that Whitman cancelled his appointment to see a nurse about his arm because she received (or made up) information that he was playing basketball. Id.; see Dkt. No. 11 at 4 (citing Dkt. No. 1 at ¶20).

The plaintiff realleges that on December 19, 2023, he saw a non-defendant nurse, who referred him to a doctor and a physical therapist. Dkt. No. 12 at ¶28; see Dkt. No. 11 at 5 (citing Dkt. No. 1 at ¶22). He then contested Whitman's report that he was playing basketball and requested a TENS unit for his pain. Dkt. No. 12 at ¶¶29–36; see Dkt. No. 11 at 5 (citing Dkt. No. 1 at ¶¶23–30). He realleges that in January 2024, Denneau cancelled his doctor appointment and forced him to undergo a "Functional Observation" to determine if he was faking his injury; he alleges that Denneau did this in concert with Whitman in retaliation for the plaintiff complaining about his care and the false information in his medical file. Dkt. No. 12 at ¶¶37–38; see Dkt. No. 11 at 6 (citing Dkt. No. 1 at ¶¶31–32).

The plaintiff realleges that on February 1, 2024, Kueh—in concert with Whitman and in retaliation for the plaintiff's previous complaints—cancelled another doctor's appointment, forged Kimball's signature and completed a false assessment form. Dkt. No. 12 at ¶¶42–49; see Dkt. No. 11 at 6 (citing Dkt. No. 1 at ¶¶34–38). But the plaintiff newly alleges that, "[a]lternatively," in concert with Whitman and Kuehn and consistent with the prison's policy of denying incarcerated persons proper medical care, Kimball provided Kuehn the allegedly false information in the assessment form. Dkt. No. 12 at ¶50. He says that Kimball knew about the plaintiff's shoulder injury but took no action to help him and instead retaliated against him for complaining about his medical

care and Whitman's false note about the plaintiff playing basketball by providing Kuehn the false information. Id. at ¶51.

The plaintiff realleges that in February 2024, Whitman refused to schedule him for a doctor's appointment, and he then reviewed his medical files in which Kuehn allegedly fabricated Kimball's signature and refused to remove the alleged false information. Dkt. No. 12 at ¶¶53–65; see Dkt. No. 11 at 7 (citing Dkt. No. 1 at ¶¶39–50). The plaintiff reiterates that Kimball denied signing the false assessment form, but he newly alleges that Kimball admitted that Kuehn called him on February 1, 2024 to cancel the plaintiff's scheduled doctor appointment. Dkt. No. 12 at 62 & n.3. He says that Kimball "will testify truthfully under oath to all of the facts [the plaintiff] has attributed to Defendant Kimball that contradict Defendant Kuehn." Id. He says that Kimball will testify that he did not sign the assessment form and did not speak with Kuehn about his assessment of the plaintiff's injury or his ability to work. Id.

The plaintiff next realleges that on March 20, 2024, he spoke with a non-defendant lieutenant about Kuehn's fabricated medical forms, and that the lieutenant told him to file an internal complaint. Dkt. No. 12 at ¶¶66–67; see Dkt. No. 11 at 7 (citing Dkt. No. 1 at ¶51). He realleges that Pontow approached him about the forms, admitted talking to Kuehn about the forms falsely attributed to Kimball and encouraged him not to file a complaint. Dkt. No. 12 at ¶69; see Dkt. No. 11 at 7–8 (citing Dkt. No. 1 at ¶¶52–53).

The plaintiff newly alleges that, before speaking with the plaintiff, Pontow contacted Kuehn, told him about the plaintiff's discussion with the lieutenant and suggested that he "would cover for Defendant Kuehn by falsely misleading [the plaintiff] into not filing a complaint by telling him that it was Defendant Pontow who talked to Defendant Kuehn on February 1, 2024." Dkt. No. 12 at

8

Case 2:24-cv-00585-PP   Filed 02/21/25   Page 8 of 16   Document 31

¶68. The plaintiff says that "[u]pon information and belief," Kuehn agreed to the plan, and Pontow then spoke with the plaintiff about not filing a complaint. Id. The plaintiff alleges that after he called out Pontow's apparent lie about speaking with Kuehn on February 1, 2024, Pontow again contacted Kuehn to call off the plan to cover for her because the plaintiff knew that Pontow was not working on February 1, 2024. Id. at ¶71. He says that Pontow instead suggested—and that Kuehn agreed—that Kuehn "should plow ahead and insist that it was Defendant Kimball that she spoke with on February 1, 2024." Id. He claims that Pontow interfered with the plaintiff's attempt to receive medical care and retaliated against him in concert with all other defendants and pursuant to the alleged policy of denying incarcerated persons timely and appropriate medical care. Id. at ¶¶74–77.

The remainder of the factual allegations in the amended complaint are identical to those in the original complaint, so the court will not detail them here. Compare Dkt. No. 12 at ¶¶78–123; and Dkt. No. 11 at 8–10 (citing Dkt. No. 1 at ¶¶55–95).

The plaintiff maintains that the defendants violated federal and state law by "providing inadequate medical care, failing to intervene to provide him proper care and being negligent to his serious medical issue." Dkt. No. 11 at 10; see Dkt. No. 12 at ¶¶125–128; 157–160; 174–178. He includes a new claim that all defendants were deliberately indifferent to his serious medical condition by falsifying his health record to justify canceling his doctor's appointments and delaying proper medical care. Dkt. No. 12 at ¶¶152–156. He reiterates his claims of retaliation and conspiracy, now including the named sergeants and Kimball in the list of defendants who falsified or forged his medical documents. Id. at ¶¶161–173. The plaintiff again seeks declaratory

judgment that the defendants violated his rights; a permanent injunction arranging for proper medical treatment, removing the allegedly false information from his medical file and preventing the defendants from falsifying his medical file; and unspecified compensatory and punitive damages. Id. at pp.41–44.

  C. Analysis

 Because the amended complaint reiterates the allegations from the original complaint, the court finds that the amended complaint states the same First and Eighth Amendment and state law claims against defendants Whitman, Kuehn and Denneau. See Dkt. No. 11 at 11–13, 14–15, 18–19. The plaintiff seeks to proceed on a new Eighth Amendment claim regarding the defendants' alleged fabrications in his medical records. But the court previously allowed the plaintiff "to proceed on an Eighth Amendment claim that Whitman, Kuehn and Denneau knowingly denied him proper medical treatment based on false information *and their alleged fabrications in his medical files.*" Id. at 12 (emphasis added). This claim incorporates the plaintiff's allegations that the defendants fabricated his medical records, just as it incorporates his allegations that the defendants cancelled his doctor appointments. Id. at 12–13. The amended complaint does not state a new, separate or standalone Eighth Amendment claim against the defendants for falsifying his medical records.

 The court next considers whether the amended complaint states a claim against the newly identified sergeants (Jessie Harke, Mike Taves and Doug Koerner), Sergeant Kimball or Pontow. In the first screening order, the court did not allow the plaintiff to proceed against the John/Jane Does because the complaint only generally identified those persons and alleged that Whitman

identified them "as the source of 'misinformation' about him playing basketball while injured." Id. at 17–18. The plaintiff now alleges that he believes Sergeants Taves, Harke, Koerner may be the persons who falsely told Whitman that he was playing basketball on December 15, 2023. But he also says that he cannot be sure because Whitman may have "falsely implicated" these persons. He says that if these sergeants did not provide Whitman the false information about him playing basketball, then she must have made it up herself. He says that at least two of these sergeants, Harke and Koerner, recently told him that they did *not* provide Whitman the allegedly false information about the plaintiff playing basketball while on the no-recreation restriction. They suggested that the plaintiff could use the recreation sign-up sheet and/or video evidence to prove he was not playing basketball.

       The plaintiff's new allegations against these formerly John Doe sergeants are unclear, uncertain and contradictory. The new allegations may state a *possible* claim against the sergeants, but their contradictory nature keeps his allegations from moving "'across the line from conceivable to plausible.'" Iqbal, 556 U.S. at 680 (quoting Twombly, 550 U.S. at 570). Technically, *all* prison staff were or were not involved in the alleged violations of the plaintiff's rights. But that tautology does not allow the court "to draw the *reasonable inference*" that all prison staff are "liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. 55644, 570 (2007) (emphasis added)). The court will not allow the plaintiff to proceed against these sergeants on his uncertain hunch that they may or may not be the persons who relayed false information to Whitman—particularly given the plaintiff's concessions that perhaps *no one* relayed that information to Whitman, who may have made it up herself. Nor will the court allow the plaintiff to proceed against other potential John or Jane

Does for the reasons explained here and in the previous order. The amended complaint does not state a claim against Sergeants Taves, Harke and Koerner or the John or Jane Doe defendants.

The plaintiff next newly alleges that it is possible that Kuehn did not falsify Kimball's signature on the assessment form about his injury but instead that Kimball intentionally falsified the information in that form himself. But like his new allegations against the sergeants, the plaintiff then contradicts himself by alleging in a footnote that Kimball is willing to testify that he did *not* sign the assessment form or speak with Kuehn about the plaintiff's injury. Dkt. No. 12 at 16, n.3. This mirrors statements in the plaintiff's original complaint and his motion for emergency injunctive relief. Dkt. No. 11 at 7, 20, 22–23 (citing Dkt. No. 1 at ¶48; Dkt. No. 6 at 7). The plaintiff explains in his motion for reconsideration that he added Kimball as a defendant "to address this Court's concerns regarding [the plaintiff's] ability to secure Kimball's evidence and his overall relevance in proving the claims." Dkt. No. 20 at ¶5. This suggests, contrary to paragraph 50 of the amended complaint, that the plaintiff does not believe Kimball did anything to violate his rights, and that Kimball is willing to be a witness and to present testimony on the plaintiff's behalf. If this is true—and the court must accept that it is for the purpose of screening—there is no need for Kimball to be a defendant in this lawsuit.

The amended complaint does not state a claim against Kimball. The court will not allow the plaintiff to proceed against Kimball merely to secure what he believes will be favorable evidence in support of his claims against the other defendants. The plaintiff may obtain a declaration or other information from Kimball during discovery to help him prove his claims against the other defendants.

12

Case 2:24-cv-00585-PP   Filed 02/21/25   Page 12 of 16   Document 31

Finally, the plaintiff added detail to his allegations against Pontow regarding Pontow's alleged retaliation and participation in the conspiracy with the other defendants. The court previously did not allow the plaintiff to proceed on a claim of retaliation against Pontow because he "was not the subject of the plaintiff's grievances, so it is unclear why he would 'retaliate' against the plaintiff for filing them"; because Pontow's "alleged lies to the plaintiff were provably false, and the plaintiff does not allege that he suffered any deprivation because of them"; and because a reasonable incarcerated person "would not have been deterred from pursuing his administrative complaints" because of Pontow's alleged lies. Dkt. No. 11 at 15.

The plaintiff's new allegations do not change the court's conclusion. The plaintiff newly alleges that on March 20, 2024, Pontow talked to Kuehn before lying to the plaintiff about Kuehn's fabricated assessment form, telling the plaintiff that it was Pontow who talked to Kuehn on February 1, 2024 about the plaintiff's physical abilities rather than Kimball. The plaintiff alleges that this conversation happened after he spoke with the lieutenant about filing an internal complaint but before Pontow initiated a discussion with the plaintiff about the complaint. He then alleges that after the plaintiff called out Pontow about his lie (pointing out that Pontow did not work on February 1, 2024), Pontow *again* called Kuehn to call off the plan and told her to say she had spoken to Kimball about the plaintiff's assessment form.

These new allegations push the boundaries of plausible allegations. The plaintiff says he believes these conversations between Pontow and Kuehn occurred "upon information and belief," but he does not explain where this newfound belief comes from. He says that the first newly alleged conversation occurred after he spoke with the lieutenant, yet he maintains that Pontow

13

Case 2:24-cv-00585-PP    Filed 02/21/25    Page 13 of 16    Document 31

approached him about the internal complaint "shortly after" the plaintiff spoke with the lieutenant. The plaintiff wants the court to believe that in the span of minutes, Pontow concocted this plan to mislead the plaintiff; rushed to a phone (or Kuehn's workplace); delivered the plan to Kuehn, who accepted it without hesitation; and then spoke with the plaintiff again. He then insists that Pontow returned to Kuehn after the plaintiff called his bluff and fed her the plan to blame Kimball (whose signature already was on the form from over a month earlier and who the plaintiff alleges may or may not have signed the plaintiff's assessment form or spoke with Kuehn about it, though he adamantly told the plaintiff that he *did not* sign the form or speak with Kuehn about the assessment and is willing to testify to this).

The plaintiff's allegations are contradictory, difficult to follow and difficult to credit. More important, they do not remedy the problems the court identified in the first screening order regarding the plaintiff's claim of retaliation against Pontow. The plaintiff still has not explained why Pontow would "retaliate" against the plaintiff for filing grievances against other staff. He not only reiterates that Pontow's lies were "provably false" but says that he did prove that they were false, which made Pontow call off the plan he allegedly hatched with Kuehn. And the plaintiff's new allegations strengthen the court's third point that a reasonable incarcerated person in the situation—one who had just called out Pontow for lying about the falsified records—would not have been dissuaded by those lies from pursuing his administrative remedies. The plaintiff's new allegations do not remedy the issues from his original complaint. The amended complaint does not state a claim of retaliation against Pontow.

The plaintiff attempts to resurrect the conspiracy claim that the court dismissed in the first screening order by relying on these new allegations against

14

Case 2:24-cv-00585-PP    Filed 02/21/25    Page 14 of 16    Document 31

Pontow. The court recounted in the previous order that the plaintiff "has not alleged that Pontow 'reached an agreement' with any other defendant (or person) to violate [the plaintiff's] rights[.] . . . That Pontow independently attempted to dissuade the plaintiff from filing an administrative complaint is not evidence that he conspired with others." Dkt. No. 11 at 16. The plaintiff now alleges that Pontow twice spoke with Kuehn, who agreed with Pontow's plan that he would tell the plaintiff that he (and not Kimball) signed the assessment form and talked to Kuehn on February 1, 2024. This would suggest that Pontow did not act independently but instead conspired with at least Kuehn to violate the plaintiff's rights.

These new allegations do not save the plaintiff's conspiracy claim. The court explained in the previous order that to proceed on a claim of conspiracy, "the plaintiff must show that '(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights.'" Id. at 15 (quoting Beaman v. Freesmeyer, 776 F.3d 500, 510 (7th Cir. 2015)). The court warned that the plaintiff could not use speculative evidence to support his claim and instead "must 'plead facts plausibly suggesting that the conspiracy caused a harm of constitutional magnitude.'" Id. (citing Beaman, 776 F.3d at 511; and quoting LaFaive v. Wolff, Case No. 23-2549, 2024 WL 277454, at *2 (7th Cir. Jan. 25, 2024)). The plaintiff's conspiracy claim still fails because even with his new allegations, he still does not state a claim against Pontow. As the court explained, even if Pontow concocted the failed plan with Kuehn's agreement, that plan did not deprive the plaintiff of any right. The plaintiff says that he was not fooled by Pontow's ruse and still filed his administrative complaints. And Kuehn allegedly had already forged Kimball's name on the assessment

form before Pontow allegedly told her to do it (unless Kimball signed the form, which he told the plaintiff he did not). Even if the court were to believe the plaintiff's confusing and speculative allegations about Pontow's communications to Kuehn, those allegations do not state a claim of conspiracy.

The plaintiff's motion for leave to amend his complaint is futile because his proposed amended complaint does not change the court's conclusions from the previous screening order, does not cure the deficiencies described in the previous order and does not state a viable claim against any new defendants. It adds convoluted allegations against defendants who the plaintiff is not even sure were involved in the alleged violations of his rights or who he seeks to rely on for information bolstering his claims against the other defendants. The court will deny the plaintiff's motion for leave to amend his complaint. Because the plaintiff has twice filed defective or futile motions to amend his complaint, **the court will not consider further motions to amend the complaint**. The original complaint remains the operative complaint.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for reconsideration of its previous order denying his motion to file an amended complaint. Dkt. No. 20.

After reconsideration, the court **FINDS** that the amended complaint (Dkt. No. 12) does not state additional claims for relief and **DENIES** the plaintiff's motion for leave to file the amended complaint. Dkt. No. 20. The original complaint remains the operative complaint. Dkt. No. 1.

Dated in Milwaukee, Wisconsin this 21st day of February, 2025.

BY THE COURT:

_____
HON. PAMELA PEPPER
**Chief United States District Judge**